[Civ. No. 45795. First Dist., Div. One. Dec. 16, 1980.]

LOREL CLARK et al., Plaintiffs and Respondents, v.
BELLEFONTE INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Hoge, Fenton, Jones & Appel, H. R. Lloyd and Charles R. Dean, Jr., for Defendant and Appellant.

Hupf, Blum & Pollak and Steven L. Pollak for Plaintiffs and Respondents.

**OPINION**

**BOONE, J.\***—Defendant Bellefonte Insurance Company appeals from a judgment for plaintiff Lorel Clark[1] on a special jury verdict in the sum of $15,000. The verdict is based upon a finding of breach of contract by defendant Bellefonte in connection with an insurance policy issued by Bellefonte to plaintiff. Defendant claims error in denying its motion for judgment notwithstanding the verdict and in the giving and refusal of certain jury instructions. We have concluded that the defendant was entitled to judgment notwithstanding the verdict; hence, consideration of the other contentions is not necessary.

Plaintiff Clark operated an automobile "detailing" business, as L. C. Auto Polishing, at 7046 Mission Street, Daly City, in a rented wood frame building. The business consisted of cleaning and polishing automobiles in preparation for sale or resale by automobile dealers. In general, plaintiff obtained vehicles from the lots of dealers with whom he contracted, brought the vehicles to his premises, cleaned and polished them, and returned the vehicles to the dealers. Cars were kept overnight in the building on occasions.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]The plaintiffs are Lorel Clark and his wife, LaVerne Clark, but the breach of contract claim was submitted to the jury on behalf of plaintiff Lorel Clark only.

In 1975 plaintiff obtained garage liability insurance through Trinity Company, an insurance broker, and its employee, Jim Sullivan. Coverage was placed by Anderson and Murison, a managing general insurance agency which had authority to bind certain insurers, including defendant Bellefonte. The insurer on the 1975 policy was Yosemite Insurance Company. It was a standard garage keepers' legal liability policy, including third party liability coverage of the insurer as excess insurance.

The coverage was renewed in 1976 with Bellefonte as the insurer under the same standard policy. No other type of garage insurance is available; in particular, a person cannot obtain insurance for losses of property of others for which he is not legally liable.

The relevant insuring clause in the garage keepers' legal liability portion of the policy provided that: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: . . . K-2. loss of an automobile caused by theft of the entire automobile; . . . occurring while such automobile is in the custody of the insured for safekeeping, storage, service or repair . . . ." The policy limit for that coverage was $6,000, subject to a deductible of $250 per claim.

On returning to his business premises the morning of Friday, July 1, 1976, plaintiff discovered that someone had broken the lock on the door and two Cadillac automobiles were missing, one owned by Don Lucas Cadillac and the other owned by Fairway Chevrolet. The door was open and the lock was off the hinges. Plaintiff had no burglar alarm, no security patrol and no safe in which to secure car keys. Some of the windows in the building were broken. At closing time it was plaintiff's practice to put the car keys on top of the front tires, a custom he learned from automobile dealers who believed that was the last place anyone would look for keys. There was evidence of frequent automobile thefts from dealers in the area, even thefts from their lots during the day.

The Don Lucas automobile was recovered two days later with the tires, wheels and battery removed and a damaged fender. The ignition lock was punched, indicating it had been hot wired. That Cadillac had already been sold to a customer. Don Lucas obtained plaintiff's permission to repair the vehicle and then deliver it to the customer. Inasmuch as the automobile had been sold, Don Lucas would have repaired it

anyway, with or without plaintiff's consent. The cost of repairs was $971.88.

The Fairway Chevrolet automobile was found three or four days after the theft. It was also damaged. The repair estimate was $506.87. There was no direct evidence as to whether or not the key had been left in the ignition.

Plaintiff immediately informed his agent, Sullivan, of the theft of the cars. Sullivan reported the loss to Anderson and Murison by telephone the same day and made a written report the next day, Saturday, July 2. The written report was received by Anderson and Murison on July 7, and the next day it assigned the claim to Underwriters Adjusting Company for investigation and report. The matter was assigned, in turn, by the adjusting firm to Virginia Patane on July 15. On that day Patane contacted Don Lucas, Fairway and plaintiff, she ordered a copy of the police report, and she retained an appraiser to assess the damage to the Fairway vehicle.

The police report was received by Patane on July 22. Inasmuch as that report did not indicate that the premises had been broken into, Patane sent field adjuster Ann Blackman to the premises to obtain a statement from plaintiff and to take photographs.

On July 29, 1976, Patane submitted a written report to Bellefonte together with the repair bills or estimates and copies of the police report and plaintiff's statement. The report contained these comments by Patane: "... Our adjuster states that there is no question that there was a break-in, and the photos show where the lock was forced and also where a side door was pried....

"Our adjuster states that your insured is located in a middle-class commercial/residential area. He is situated in the middle of the block where there is little traffic, and there are several auto dealerships in this area. Your insured stated verbally that the dealerships have constant trouble with car thefts. The insured premises consist of a wood structure which is fairly solid.[2] However, there is no alarm system, and apparently the hasp which was pulled out by the thieves did not present a great problem to them. Also, our Field Adjuster states that the fence in front of the shop was down. Your insured is presently reinforcing the door and repairing the fence.

---

[2]Plaintiff testified to facts indicating that the wood structure was something less than solid.

"Your insured carries a Garage Keepers Liability Policy with a $250 deductible. Although there is evidence of break-in, which would *seem* to preclude negligence on the part of your insured, there is nevertheless the fact that the premises are vulnerable, and that perhaps not every precaution has been taken by your insured to prevent an occurrence such as this. In this respect, negligence on the part of your insured could be established.

"We leave it to your decision as to whether you wish to honor these two claims...." (Italics by the author.)

Carl George, the insurer's claims supervisor, responded to Patane's report by letter of August 9, 1976. George's letter included the following: "...The statement obtained from the insured, in our opinion, did not really cover the entire situation. There was no mention of where the keys to these automobiles were at the time they were stolen. We did notice, on the police report, that the 1975 Cadillac ignition had been punched. Therefore, we can only assume that the keys were not in the vehicles at the time they were stolen.

"You did not follow-up with a witness statement from the alleged witness who saw the break-in. However, we feel that the information is sufficient to make a determination as to the legal liability of the insured.

"In our opinion, since there is no question that the insured's building was broken into and the vehicles stolen, there is no legal liability on behalf of the insured. You indicate the insured's premises are vulnerable to theft. However, what premises are not vulnerable to theft? Therefore, we do not feel a payment should be made to the owners of the stolen units since there is no legal liability on behalf of our insured...."

On August 28 Patane sent letters to Don Lucas and Fairway stating that the investigation was complete, that it disclosed that the locked premises of plaintiff were broken into by persons unknown, and that "our principal" concurs that there is no legal liability on the part of plaintiff for the theft and has instructed us to deny all claims. Pursuant to demands by the dealers, plaintiff then agreed to work off the repair costs.

At the suggestion of his agent, Sullivan, plaintiff retained an attorney who wrote to Bellefonte on September 1 stating his opinion that under the policy plaintiff "is fully covered for the claimed loss" and advising that plaintiff was sustaining business losses as a result of the denial of the claims. The insurer, through Mr. George, responded by letter of September 9 as follows: "[W]e fully agree that the insured is covered for legal liability under the above captioned policy. We have not denied coverage to the insured, and we do not understand how you reached that conclusion.

"The policy provides that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay.

"The claims of Don Lucas Cadillac and Fairway Chevrolet were denied because the vehicles were stolen out of the insured's locked garage. Therefore, there is no legal liability on behalf of the insured since the insured had taken all the necessary precautions for the safekeeping of the vehicles. . . . "

Without further communication, so far as appears, the present action was filed on October 4, 1978, by the same law firm. The complaint was in four counts. The first cause of action alleged that defendants Jim Sullivan and Richard Shannon, doing business as Trinity Company, and Bellefonte Insurance Company misrepresented to plaintiffs Lorel and LaVerne Clark that the policy would cover plaintiffs for theft of an automobile from the premises whether or not plaintiffs were responsible for the theft. The second count was for declaratory relief. The dispute, so far as it was alleged, was that defendants contend that plaintiffs are not entitled to the benefits of the policy, whereas "Plaintiffs contend that they are covered in the event of a loss herein sustained, and as such, should be reimbursed for all losses incurred as a result of the incident alleged."

The third count asserted that defendants "breached said contract by refusing to pay Plaintiffs for losses sustained as a result of the theft of the two automobiles from the premises." The fourth cause of action alleged that "Defendants have refused to accept or discuss settlement or to negotiate in good faith, and Defendants did not at any time make any offer of settlement to Plaintiffs."

The case proceeded to jury trial on the first, third and fourth counts only. The jury was given a special verdict form corresponding to the

three counts tried. The form referred, in turn, to "the misrepresentation or fraud theory," "the breach of contract theory" and "the breach of duty of good faith theory," and the jury was asked to "find for the plaintiff or plaintiffs named and checked below and assess the damages" with respect to each of those three theories. The findings were for both plaintiffs against Trinity Company only on the first count, awarding damages of $117.50 and for plaintiff Lorel Clark against Bellefonte "on the breach of contract theory," assessing damages in the sum of $15,000.[3]

On the portion of the verdict form referring to "the breach of good faith theory," the jury checked no names and assessed no damages. There is no contention that the verdict is incomplete in this respect. On the contrary, counsel for both parties have proceeded on the assumption, apparently well founded, that the jury necessarily found against the theory alleged in the fourth cause of action. (See 4 Witkin, Cal. Procedure (2d ed. 1971) § 284, p. 3090.)

Defendant Bellefonte's motions for nonsuit, for directed verdict and for judgment notwithstanding the verdict were denied. It appeals only from the judgment. An order denying a motion for judgment notwithstanding the verdict is appealable (Code Civ. Proc., § 904.1, subd. (d)) and ordinarily an appealable order from which no appeal was taken cannot be reviewed on appeal from the final judgment (Code Civ. Proc., § 906). However, if a motion for judgment notwithstanding the verdict should have been granted, the appellate court shall "order judgment to be so entered on appeal from the judgment *or* from the order denying the motion for judgment notwithstanding the verdict." (Code Civ. Proc., § 629, italics added; see *Pirkle* v. *Oakdale Union* etc. *School Dist.* (1953) 40 Cal.2d 207, 213 [253 P.2d 1].) Hence, the issue is reviewable on this appeal.

■ A motion for judgment notwithstanding the verdict is subject to the same test as a motion for directed verdict. The motion for judgment may be granted only if there is no substantial evidence to support the verdict when viewed in the light most favorable to the party who obtained the verdict. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].)

---

[3]Plaintiff presented evidence that he sustained some loss of business and income as a result of the denial of the claims.

■ So viewed, there is no substantial evidence of any breach of contract by defendant Bellefonte apart from the claim of breach of the implied covenant of good faith and fair dealing and on that issue the jury verdict was adverse to plaintiff. The policy contains the standard "no action" provision: "No action shall lie against the company . . . until the amount of the insured's obligation has been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." ■ The insurer thus has the right to control the defense of claims. (*Diversified Mortg. Investors* v. *U.S. Life Ins. Co.* (2d Cir. 1976) 544 F.2d 571, 575; 7C Appleman, Insurance Law and Practice (Berdal ed.) § 4681, pp. 2-3.)

Cases dealing with waiver or estoppel are inapplicable. It is true that the insurer may be precluded from asserting its right to control the defense. This is so when the carrier erroneously denies coverage and/or improperly refuses to defend the insured. In such a case, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement and any costs or other damages resulting from the insurer's breach of contract. (*Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26, 35 [108 Cal. Rptr. 737]; *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal. App.3d 134, 146 [85 Cal.Rptr. 693]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.* (1961) 190 Cal. App.2d 194, 204 [11 Cal.Rptr. 762]; *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 786 [8 Cal.Rptr. 665]; *Kershaw* v. *Maryland Casualty Co.* (1959) 172 Cal.App.2d 248, 257, 258-259 [342 P.2d 72]; *Peterson* v. *Allstate Ins. Co.* (1958) 164 Cal.App.2d 517, 522 [330 P.2d 843]; *Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83, 98 [330 P.2d 432]; *Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, 258 [286 P.2d 1000]; 7C Appleman, *supra*, § 4689, pp. 207-209; 44 Am.Jur.2d, Insurance, §§ 1546, 1547, 1550, pp. 426-428, 432; Annot. (1959) 67 A.L.R.2d 694, 711, 717-718.)

The same consequences flow from a judgment rendered against the insured after the carrier has wrongfully refused to defend an action. The insurer is ordinarily bound by the judgment (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 561 [334 P.2d 881]; *Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 630-

632 [40 P.2d 311]) and it may even be liable for the amount of the judgment or a settlement in excess of the policy limit if the denial of a defense is coupled with a refusal to accept a reasonable settlement offer (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 660 [328 P.2d 198]; 7C Appleman, *supra*, § 4682, p. 41; see *Chicken Delight of Cal., Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1973) 35 Cal. App.3d 841, 849 [111 Cal.Rptr. 79]).

■ There is no evidence of any breach of contract by defendant Bellefonte in these respects. It did not deny coverage and it did not refuse to defend plaintiff. On the contrary, in response to the letter of September 1 from plaintiff's attorney, the company expressly acknowledged that coverage existed. Denial of the claims was not based on lack of coverage but on the ground that the plaintiff was not legally liable to the automobile dealers.

In these circumstances, the standard "no action" clause precludes recovery by the insured of amounts paid to the claimants. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 449 [91 Cal.Rptr. 6, 476 P.2d 406]; *Greenville Shipbuilding Corp.* v. *Hartford Acc. & Ind. Co.* (N.D.Miss 1971) 334 F.Supp. 1228, 1236, affd. (5th Cir. 1972) 460 F.2d 1063; *Rosenthal* v. *Security Insurance Group of New Haven* (La.App.1967) 205 So.2d 816; *Louisiana Farm Supply Co.* v. *Federal Mut. Ins. Co.* (Mo.App.1966) 409 S.W.2d 239, 242.)

Plaintiff treats the issue presented as if defendant Bellefonte were relying simply on breach of the cooperation clause, and argues that there was no proof of prejudice by the insurance company. (See *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728, 736-737 [79 Cal.Rptr. 326, 456 P.2d 982].) It is true that voluntary payments by the insured may give rise to that defense. (See *Diversified Mortg. Investors* v. *U.S. Life Ins. Co., supra,* 544 F.2d 571, 575; *Dairyland Insurance Company* v. *Hughes* (W.D.Va.1970) 317 F.Supp. 928, 937; *Star Transfer Co.* v. *Underwriters at Lloyds of London* (1944) 323 Ill.App. 90 [55 N.E.2d 109, 111-112].)

But the issue is more basic. The threshold question is whether or not the company has breached the contract in the first instance in view of the separate "no action" provision of the policy. ■ In third party liability insurance, as here, the gist of the insurer's indemnity undertaking is that it will indemnify the insured against legal liability

to others when that liability is established by judgment in action in which the insurer has an opportunity to defend or by a settlement in which the insurer participates. The carrier may become obligated to reimburse the insured for payments to claimants only where it has breached the contract by denying coverage or refusing to defend. In the absence of such denial or refusal, there is simply no breach of contract. As explained in *Sargent* v. *Johnson* (8th Cir. 1977) 551 F.2d 221, 231: "Two aspects of the insurer's obligation are to be considered. The first is the duty to defend. It cannot be questioned that Liberty was affording a defense to Haglin. The other duty is one to pay or settle. The time for performance of that duty had not been reached. . . . Because the time for Liberty's payment performance had not been reached through a final judgment or a demand for settlement within policy limits, Liberty had not breached any policy obligation to its insured, . . . "

*Willett's Plumbing* v. *Northwestern Nat. Cas.* (1977) 261 Ark. 447 [548 S.W.2d 830, 831], adds: "The rule is that, absent a demonstration of bad faith, a liability insurer acts within its contract rights whenever it refuses to voluntarily settle a claim and insists there be an adjudication of the matter on its merits."

██ The mere failure to reimburse the insured was not a breach of contract. Hence, the third count of the complaint did not state a cause of action in alleging such a breach "by refusing to pay Plaintiffs for losses sustained as a result of the theft of two automobiles from their premises." Plaintiff failed to prove a cause of action for breach of contract in the respect alleged for the same reason. Accordingly, defendant Bellefonte was entitled to a directed verdict and to judgment notwithstanding the verdict on the third count.

We do not suggest that an insurer's denial of a liability claim cannot constitute a breach of its duty to the insured under any and all circumstances. While the California cases have not considered the precise question, it has been recognized that an insurer may breach the covenant of good faith and fair dealing by means other than denial of coverage or refusing to defend or rejection of a reasonable settlement offer. (See *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 871 [157 Cal.Rptr. 482, 598 P.2d 452], failure to properly investigate insured's disability insurance claim.) Decisions in other jurisdictions indicate that an insurer's conduct in denying or delaying action on a third party claim may render it liable for a settlement made by the insured where that conduct is arbitrary, capricious or without substantial sup-

port in the facts. (See *Greenville Shipbuilding Corp.* v. *Hartford Acc. & Ind. Co., supra,* 334 F.Supp. 1228, 1236; *Fireman's Fund Ins. Co.* v. *Security Ins. Co.* (1976) 72 N.J. 63 [367 A.2d 864, 869]; Annot. (1959) 67 A.L.R.2d 1086, 1087, fn. 3.) *Isadore Rosen & Sons, Inc.* v. *Security Mutual Ins. Co.* (1972) 31 N.Y.2d 342 [339 N.Y.S.2d 97, 291 N.E.2d 380, 382] held that: ". . . the insurer's obligation to act in good faith for the insured's interests may be breached in other ways than by refusing or neglecting to defend a suit. It may be breached by neglect and failure to act protectively when the insured is compelled to make a settlement at his peril; and unreasonable delay by the insurer, in dealing with a claim, may be one form of refusal to perform which could justify settlement by the insured."

The fourth count of the complaint did not assert unreasonable delay in acting on the claims as a basis for the allegation of bad faith. Considering the circumstances, including the nature of the claims, the relatively minor amounts thereof and the times and distances involved, it is doubtful that any such contention could be sustained. In any event, the allegation was that: "Defendants have refused to accept or discuss settlement or to negotiate in good faith, and Defendants did not at any time make any offer of settlement to Plaintiffs." In view of the duty imposed on plaintiff as a bailee for mutual benefit (see *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 850 [88 Cal.Rptr. 39]; *Annot. (1966) 7 A.L.R.3d 927, 935), including the burden of explaining the loss (see Vilner* v. *Crocker National Bank* (1979) 89 Cal.App.3d 732, 737-738 [152 Cal.Rptr. 850]; Annot.(1972) 43 A.L.R.3d 413, 415; 9 Cal.Jur.3d, Bailments, § 43, p. 173), it is conceivable that the evidence could give rise to a question of fact as to whether or not Bellefonte acted in good faith toward plaintiff in denying the claims or in maintaining that posture after being informed of plaintiff's predicament with the dealers.

No opinion is expressed on that question inasmuch as its determination is unnecessary to the appeal. The bad faith theory of the fourth count was submitted to the jury under instructions stating that "An insurance company which fails to deal fairly and in good faith with its insured is subject to liability for all damages proximately resulting from such conduct" (BAJI No. 12.92, modified) and that "An insurance company's obligation of good faith requires that before rejecting a claim it make an honest, intelligent and knowledgeable evaluation of the claim on its merits' (BAJI No. 12.97, modified).

As noted, the jury found for plaintiff against Bellefonte only "on the breach of contract theory" of the third count. The fourth count, described in the verdict form as "the breach of duty of good faith theory," was for the defendant; at least, the parties have accepted that as the only reasonable interpretation of the verdict. Plaintiff did not appeal from the judgment insofar as it was adverse to him. Hence, the issues raised by the fourth count are not before us.

Defendant Bellefonte is entitled to judgment under the jury verdict on the first and fourth causes of action of the complaint. We hold that Bellefonte was entitled to a directed verdict and judgment notwithstanding the verdict on the third count. The second count, for declaratory relief, was apparently abandoned at the trial. There is no apparent reference to it in the reporter's transcript. In any event, no conceivable controversy or justiciable dispute concerning insurance coverage is presented. (See 3 Witkin, Cal. Procedure (2d ed. 1971) § 716, p. 2338.) Accordingly, judgment should be entered for Bellefonte on all counts.

The judgment is reversed with directions to enter judgment in favor of defendant Bellefonte Insurance Company and against both plaintiffs.

Elkington, Acting P. J., and Grodin, J., concurred.

A petition for a rehearing was denied January 15, 1981, and respondents' petition for a hearing by the Supreme Court was denied March 2, 1981. White, J.,* participated therein. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.