[No. A084765. First Dist., Div. Five. Apr. 8, 1999.]

SAFECO INSURANCE COMPANY OF AMERICA, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
MARIANNE McKINNEY et al., Real Parties in Interest.

## COUNSEL

Archer, McComas, Breslin, McMahon & Chritton, W. Eric Blumhardt and William H. Staples for Petitioner.

No appearance for Respondent.

Curtis L. Johnson for Real Parties in Interest.

## OPINION

**STEVENS, J.**—The question before us in this writ proceeding is whether petitioner, Safeco Insurance Company of America (Safeco), is obligated to pay a stipulated judgment entered into by its insureds without Safeco's consent when Safeco had undertaken a defense of the liability action. We conclude that Safeco is not bound by the stipulated judgment, and we grant Safeco's petition for a writ of mandate to compel the trial court to grant its motion for summary judgment.

### I. BACKGROUND

The underlying action was a wrongful death action brought by the McKinney family, real parties in interest, after Patrick McKinney was shot and killed while driving his truck. The defendants in that wrongful death action included the teenage shooter (Matthew Espinal), the teenage driver of a second car (Greg Van Huisen) accompanying the car driven by the shooter, and the parents of Greg Van Huisen (Paul and Deborah Read) at whose house all the defendant youths had been drinking that night.[1]

Safeco insured the Reads under a homeowners policy, and although the policy excludes injuries arising from the use of a motor vehicle, Safeco agreed to defend the Reads subject to a reservation of rights. Mercury

---

[1]Espinal drove his car directly in front of McKinney's truck, while Van Huisen drove immediately behind McKinney, trapping him. Espinal then changed lanes, positioning his car alongside McKinney's truck. Then Espinal shot at McKinney's tires and also shot McKinney.

Casualty Company insured the Reads plus Greg Van Huisen under an automobile policy, and Mercury, too, agreed to defend. Each insurance company retained separate counsel who acted as cocounsel in the case.

In 1995, the Reads and Van Huisen stipulated to a judgment in favor of the McKinneys in the amount of $645,000. The stipulation contained admissions of liability by Van Huisen and the Reads: that Van Huisen had been tailgating Patrick McKinney and may have contributed to his death, and that the Reads had not supervised the consumption of alcohol in their home and had negligently entrusted their automobile to Van Huisen.

The stipulation provided that $145,000 was to be paid by Mercury, and the Reads assigned to the McKinneys all their rights under the Safeco policy. The McKinneys agreed not to execute against the Reads or Van Huisen in excess of $145,000, and they further agreed that the judgment against the Reads and Van Huisen would be expunged after the McKinneys had resolved their claims against Safeco.

The present lawsuit is an action by the McKinneys against Safeco seeking to recover the $500,000 liability limit on the Safeco policy pursuant to the stipulated judgment. The McKinneys' lawsuit is based upon two theories— direct recovery from the insurer pursuant to Insurance Code section 11580 and damages for the insurer's bad faith based upon the assignment of rights from the Reads. Safeco moved for summary judgment, seeking a determination that Safeco has no obligation to pay the stipulated judgment. The motion was denied, and Safeco now seeks a writ of mandate to compel the trial court to grant summary judgment. Real parties in interest submitted opposition to the petition, and we issued an alternative writ.

## II. Discussion

### A. *Direct Action*

An injured third party claimant has a statutory right to bring a direct action against the tortfeasor's liability insurer as long as there is a judgment against the insured. (Ins. Code, § 11580, subd. (b)(2).) This requirement of a judgment against the insured is reflected in the standard "no action" provision of a liability insurance policy. Here, Safeco's policy provided: "[N]o action . . . shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us." The first question we must decide is whether the stipulated judgment entered into by the Reads without Safeco's consent qualifies as a judgment for purposes of recovery under Insurance Code section 11580. We conclude it does not.

The "no action" clause gives the insurer the right to control the defense of the claim—to decide whether to settle or to adjudicate the claim on its merits. (*Clark* v. *Bellefonte Ins. Co.* (1980) 113 Cal.App.3d 326, 335 [169 Cal.Rptr. 832].) When the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense, and a stipulated judgment between the insured and the injured claimant, without the consent of the insurer, is ineffective to impose liability upon the insurer. (*Wright* v. *Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1024 [14 Cal.Rptr.2d 588]; see *Pruyn* v. *Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 515-516 [42 Cal.Rptr.2d 295].) "[T]he potential for abuse [is] apparent in a situation where an insurer, in the absence of a breach of its duty to its insured, could be bound by a consent judgment of this nature." (*Wright* v. *Fireman's Fund Ins. Companies, supra,* 11 Cal.App.4th at p. 1019; see also *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 893-894 [162 Cal.Rptr. 115].) Even a stipulated judgment negotiated with the help of the insured's independent *Cumis*[2] counsel is not binding on the insurer without its consent. (*Rose* v. *Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 717-718 [3 Cal.Rptr.2d 483].)

■ On the other hand, if the insurer wrongfully refuses to defend, leaving the insured to his own resources to provide a defense, then the insurer forfeits the right to control settlement and defense. In that event, the insured is free to settle the lawsuit on his own, and the insurer is bound by a stipulated judgment. (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791-792 [244 Cal.Rptr. 655, 750 P.2d 297]; *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240-241 [178 Cal.Rptr. 343, 636 P.2d 32]; *Sanchez* v. *Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1784, 1786 [26 Cal.Rptr.2d 812]; see *Pruyn* v. *Agricultural Ins. Co., supra,* 36 Cal.App.4th at p. 515; *Diamond Heights Homeowners Assn.* v. *National American Ins. Co.* (1991) 227 Cal.App.3d 563, 581 [277 Cal.Rptr. 906].)

■ In the present case, Safeco indisputably provided a defense and, accordingly, had the right to control that defense and to decide on its own whether or not to settle. The Reads had no authority to settle the matter without the consent of Safeco; the stipulated judgment between the McKinneys and the Reads is unenforceable against Safeco.

## B. *Bad Faith Refusal to Settle*

■ Of course, an insurer is required to act in good faith in dealing with its insured. Thus, in deciding whether or not to settle a claim, the insurer

---

[2]*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].

must take into account the interests of the insured, and when there is a great risk of recovery beyond the policy limits, a good faith consideration of the insured's interests may require the insurer to settle the claim within the policy limits. An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-661 [328 P.2d 198, 68 A.L.R.2d 883].)

When, as here, the insurer is providing a defense but merely refuses to settle, the insured has no immediate remedy. A cause of action for bad faith refusal to settle arises only after a judgment has been rendered in excess of the policy limits. (*Finkelstein* v. *20th Century Ins. Co.* (1992) 11 Cal.App.4th 926, 929-930 [14 Cal.Rptr.2d 305]; *Doser* v. *Middlesex Mutual Ins. Co. supra* 101 Cal.App.3d at pp. 891-892; *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 690 [319 P.2d 69, 66 A.L.R.2d 1202]; but see *Camelot by the Bay Condominium Owners' Assn.* v. *Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 48 [32 Cal.Rptr.2d 354] [dictum: bad faith may arise even without an excess judgment, though excess judgment is relevant to determination of damages].) If the insurer declines to settle and decides to go to trial and then obtains a judgment below the settlement offer or obtains a complete defense verdict, then the insured would have no cause to complain, and the insurer would have no liability. Until judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable.[3] (*Finkelstein* v. *20th Century Ins. Co., supra,* at pp. 929-930; *Doser* v. *Middlesex Mutual Ins. Co., supra,* at pp. 891-892; see *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 799 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142], disapproved on other grounds in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 432 [58 Cal.Rptr. 13, 426 P.2d 173].)

The insured's remedy to protect himself from an excess judgment is to assign to the claimant his cause of action for bad faith refusal to settle in exchange for a covenant not to enforce the judgment against the insured's personal assets. (*Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104, 1110-1112 [7 Cal.Rptr.2d 131].) This assignment, however, is not immediately assertable, and it does not settle the third party's claim. As long as the insurer is providing a defense, the insurer is allowed to proceed through trial to judgment. The assignment of the bad faith cause of

---

[3]In contrast, when the insurer wrongfully refuses to defend, the insured need not wait for a final judgment on the third party claim to sue the insurer for breach of the contractual duty to defend. (See *Tan Jay Internat., Ltd.* v. *Canadian Indemnity Co.* (1988) 198 Cal.App.3d 695, 704-705 [243 Cal.Rptr. 907].)

action becomes operative after the excess judgment has been rendered. (*Critz v. Farmers Ins. Group, supra,* 230 Cal.App.2d at p. 799.)[4]

■ In the present case, then, the McKinneys' assigned bad faith cause of action does not now support a direct action. Because we find that Safeco was providing a defense to the Reads, Safeco was entitled to control the defense and to decide whether to litigate the McKinneys' claim. If Safeco's decision to go to trial had resulted in a verdict above the policy limits, then Safeco's refusal to settle, if found to be unreasonable, could have rendered it liable for the full amount of the verdict. But until a litigated excess judgment is obtained, Safeco's refusal to settle is not actionable.

### C. *Adequacy of Representation*

■ In denying Safeco's motion for summary judgment, the trial court found triable issues of fact on whether Safeco had, by the manner in which its retained counsel handled the defense of the McKinney action, essentially abandoned the Reads, leaving them with no defense. In particular, real parties in interest (the McKinneys) asserted that the attorney retained by Safeco did nothing to prepare for trial. He undertook no investigation, retained no experts, and made no assessment of the damages or the risk of a verdict above the policy limits. He took no depositions of the McKinneys' experts. Nor did he move for summary adjudication of any issues that could have minimized the Reads' exposure. He also failed to participate in the voluntary settlement conference. Safeco disputed at least some of those facts in its moving papers, asserting that the attorney was preparing to litigate the matter.

Safeco persuasively argues that the insurer's right to control the defense cannot be denied simply because the insured disagrees with the insurer's decision not to settle or because the insured believes the defense is being poorly handled. Safeco acknowledges that if an insurer's decision to litigate results in an excess judgment then the insured (or the claimant under an assignment of rights) may recover damages in a bad faith action. However, Safeco asserts that neither the adequacy of the representation nor the effectiveness of the defense are relevant to the question whether the insured can enter into a binding settlement without the insurer's consent. We agree.

Although there is language in *Pruyn* v. *Agricultural Ins. Co., supra,* 36 Cal.App.4th at pages 515, 517, indicating that the insured is free to settle if

---

[4]There is a split of authority on whether the assignment of a bad faith cause of action can be made before the litigated judgment is rendered. (Compare *Smith* v. *State Farm Mut. Auto. Ins. Co., supra,* 5 Cal.App.4th at pages 1112-1116, requiring a judgment before the assignment, with *Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d at page 799, holding that the assignment is enforceable but only becomes operative after the excess judgment is obtained.)

he has been "abandoned" by the insurer, that language was applied in the context of the insurer's complete refusal to defend, leaving the insured exposed to the possibility of a default judgment.[5] (See also *Camelot by the Bay Condominium Owners' Assn., Inc.* v. *Scottsdale Ins. Co., supra,* 27 Cal.App.4th at p. 50; *Johnson* v. *Continental Ins. Companies* (1988) 202 Cal.App.3d 477, 486 [248 Cal.Rptr. 412].)

In contrast, Safeco did not walk away from its duty to defend its insured. Rather, Safeco agreed to undertake the defense and retained counsel to represent the Reads. The attorney retained by Safeco filed an answer, thereby protecting the Reads from a default judgment, and it is undisputed that the attorney for Mercury was taking the lead in pursuing the litigation.[6] The fact that the attorney retained by Safeco took a secondary role is not surprising since Mercury's policy was an automobile policy and Safeco's homeowners policy excluded injuries from the use of an automobile.

Because Safeco was providing a defense to the Reads, Safeco was entitled to decide whether to litigate or compromise the McKinneys' claim. Unless and until an excess judgment is rendered giving rise to a possible bad faith action for Safeco's refusal to settle, the effectiveness of the representation provided by Safeco is not at issue. Safeco is entitled to judgment as a matter of law.[7]

### III. DISPOSITION

Let a peremptory writ of mandate issue commanding the Contra Costa County Superior Court to set aside its order denying summary judgment,

[5] In the present case, the trial court erroneously relied upon the framework set out in *Pruyn* v. *Agricultural Ins. Co., supra,* 36 Cal.App.4th at pages 527-530: If the claimant in a direct action against an insurer can present evidence that the insurer wrongfully refused to defend the insured and that the insured thereafter entered into a reasonable settlement, then the burden of proof shifts to the insurer to show that the settlement was not reasonable or was the product of fraud or collusion. If the insurer cannot meet that burden, then the stipulated judgment will be binding on the insurer despite the "no action" clause in the policy.

That framework has no application here, where Safeco undertook the duty to defend. The framework of *Pruyn* v. *Agricultural Ins. Co., supra,* 36 Cal.App.4th at pages 527-528 is based upon the rule that in an action by the insured for breach of the duty to defend, the settlement entered into by the insured on his own is presumptive evidence of the liability of the insured and the amount thereof. (*Isaacson* v. *California Ins. Guarantee Assn., supra,* 44 Cal.3d at pp. 791-792.) That presumption, however, does not apply when the insurer provides a defense but merely refuses to settle. (*Id.* at pp. 792-794.)

[6] At the time the settlement was being negotiated, counsel for Mercury was preparing a summary judgment motion on the issue of causation. The motion was never filed because the settlement was reached.

[7] In light of our conclusion that the stipulated judgment is unenforceable, we need not reach Safeco's other arguments that the stipulated judgment was a sham and that coverage is excluded under Safeco's homeowners policy exclusion for injuries arising out of the ownership, use, or entrustment of a motor vehicle.

filed October 19, 1998, in McKinney v. Safeco Ins. Co. (No. C96-00523), and to enter a new and different order granting the motion.

Jones, P. J., and Haning, J., concurred.

A petition for a rehearing was denied May 7, 1999.