127 Cal.Rptr.2d 672 (2002)
103 Cal.App.4th 1335
COUNTY OF SAN DIEGO, Cross-Complainant and Appellant,
v.
ACE PROPERTY & CASUALTY INSURANCE COMPANY et al., Cross-Defendants and Respondents.
No. D038707.
Court of Appeal, Fourth District, Division One.
November 14, 2002.
Rehearing Granted December 12, 2003.
*673 John J. Sansone, County Counsel, William L. Pettingill, Deputy County Counsel, Massie, Berman & Millerick, Michael F. Millerick; Latham & Watkins, David L. Mulliken and Christine Gregorski, San Diego, for Cross-complainant and Appellant.
Anderson Kill & Olick, Alex D. Hardiman, William G. Passannante; Law Offices *674 of Amy Bach and Amy Bach, San Francisco, for United Policyholders as Amici Curiae for Cross-complainant and Appellant.
Crowell & Moring, Jonathan H. Pittman, Mark D. Plevin; Chapin Shea McNitt & Carter, Edward D. Chapin, Maria C. Roberts and Shirley A. Gauvin, San Diego, for Cross-defendants and Respondents.
McCONNELL, J.
In this insurance coverage action, cross-complainant County of San Diego (the County) appeals a judgment entered against it after the trial court granted the summary adjudication and summary judgment motions of cross-defendant Ace Property & Casualty Insurance Company (ACE), formerly known as Cigna Property & Casualty Insurance Company, formerly known as Aetna Insurance Company. The County contends the trial court misinterpreted the nonstandard third party liability policy to not provide coverage for (1) expenses the County incurred in complying with an administrative order to remediate groundwater contamination, or (2) settlements of nonlitigated claims for property damage and personal injury arising from the contamination. Specifically, the County asserts the court erred by applying Certain Underwriters at Lloyd's of London v. Superior Court (2001) 24 Cal.4th 945, 103 Cal.Rptr.2d 672, 16 P.3d 94 (Powerine), in which our Supreme Court held the term damages in the insuring clause of a standard comprehensive general liability (CGL) policy is limited to sums ordered by a court. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
ACE issued a third party liability policy to the County that was effective between 1974 and 1977. The policy requires ACE to indemnify the County "for all sums which the insured is obligated to pay by reason of liability imposed by law or assumed under contract or agreement," arising from "damages" caused by personal injuries or the destruction or loss of use of tangible property.
In 1969 the County began operating a solid waste facility known as the Ramona Landfill. The Ramona Landfill overlies potable groundwater, and in 1970 the Regional Water Quality Control Board (the Board) imposed operational requirements on the County.
In March 1997 the Board issued a cleanup and abatement order (CAO 97-17) to the County, which required it to investigate, monitor and remediate groundwater contamination caused by the Ramona Landfill. The County waived a hearing before the Board to challenge imposition of CAO 97-17.
In June 1997 the owners of property (the Sossamans) near the Ramona Landfill complained to the County that groundwater contamination would affect the property's marketability and their physical and mental health. The Sossamans requested that the County purchase their property without the necessity of litigation. The County believed it more likely than not that the Sossamans' property was contaminated. It had the property appraised "and preliminary negotiations including the preparation of necessary transfer documentation was initiated." The Atkinsons, also property owners near the Ramona Landfill, filed a similar claim in 1997.
In November 1997 the County settled the Sossamans' claims by paying them $318,000 for the acquisition of their property and relocation benefits. In December 1998 the County settled the Atkinsons' claims for $259,500.
In May 1997 the County began seeking indemnification from ACE for costs of *675 complying with CAO 97-17. In September 1997 the County began seeking indemnification from ACE for the Sossaman and Atkinson claims. ACE refused to indemnify the County, and thus it filed a cross-complaint against ACE in a declaratory relief action brought against the County by another of its insurers, Pacific Indemnity Company (Pacific).[1] The first amended cross-complaint included causes of action for express indemnity, breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief.
In an affirmative defense to the cross-complaint, ACE alleged it had no indemnity duty because the term damages in the insuring clause of the policy is limited to sums imposed by a court of law. The County moved for summary adjudication on this affirmative defense. The court granted the motion, determining the "language of the policy suggests a reasonable interpretation that the County need not suffer a judgment before [ACE'S] duty to indemnify takes effect."
ACE moved for reconsideration of the ruling on the County's motion for summary adjudication, based on Powerine, supra, 24 Cal.4th 945, 103 Cal.Rptr.2d 672, 16 P.3d 94, in which the court held the term damages in the insuring clause of a standard CGL policy is restricted to sums imposed by a court of law. On the same ground, ACE also moved for summary adjudication of its duty to indemnify the County for its expenses of complying with CAO 97-17.
On reconsideration, the court denied the County's motion for summary adjudication. The court granted ACE's motion for summary adjudication of its duty to indemnify the County for cleanup expenses.
The County then moved for reconsideration of the court's order granting ACE's motion for summary adjudication. ACE moved for summary judgment regarding its duty to reimburse the County for the Sossaman and Atkinson settlements. The court reconsidered its ruling in favor of ACE, but on the merits denied the County any relief. The court granted ACE's motion and judgment was entered for it on July 20, 2001.

DISCUSSION

I

Standard of Review
"The insurer is entitled to summary adjudication that no potential for indemnity exists ... if the evidence establishes as a matter of law that there is no coverage. [Citation.] We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy." (Smith Kandal Real Estate v. Continental Casualty Co. (1998) 67 Cal. App.4th 406, 414, 79 Cal.Rptr.2d 52.)

II

Rules of Policy Interpretation
"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.]" (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545.) "The rules governing policy interpretation require us to look first to the language of the contract ... to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. [Citations.]" (Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 18, 44 *676 Cal.Rptr.2d 370, 900 P.2d 619.) "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the `mutual intention' of the parties.... `Such an intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citations.]" (Ibid.)
"Ambiguity exists when an insurance policy provision is susceptible to two or more constructions that are reasonable and not based on strained interpretations." (Shell Oil Co. v. Winterthur Swiss Ins. Co. (1993) 12 Cal.App.4th 715, 737, 15 Cal. Rptr.2d 815.) Standing alone, the absence of a definition in the policy for a term does not render it ambiguous. (Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co. (1993) 5 Cal.4th 854, 866, 21 Cal. Rptr.2d 691, 855 P.2d 1263.) "`[Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" (Bank of the West v. Superior Court, supra, 2 Cal.4th at p. 1265, 10 Cal. Rptr.2d 538, 833 P.2d 545, italics omitted.) If "a term in an insurance policy has been judicially construed, it is not ambiguous and the judicial construction of the term should be read into the policy unless the parties express a contrary intent." (Bartlome v. State Farm Fire & Casualty Co. (1989) 208 Cal.App.3d 1235, 1239, 256 Cal. Rptr. 719.)

III

Interpretation of the ACE Policy

A
Under ACE's policy, its indemnification duty extends to "all sums which [the County] is obligated to pay by reason of liability imposed by law or assumed under contract or agreement," for "damages ... by reason of injury of any nature sustained by any person or persons," or for "damages because of injury to or destruction of tangible property." (Italics added.) The County contends the trial court erred by determining that under Powerine, supra, 24 Cal.4th 945, 103 Cal.Rptr.2d 672, 16 P.3d 94, the term damages in the insuring clause of the ACE policy is limited to sums ordered by a court.[2]
In Powerine, the court held a standard CGL policy that covered "`all sums that the insured becomes legally obligated to pay as damages,'" limited the insurer's duty to indemnify the insured to "money ordered by a court." (Powerine, supra, 24 Cal.4th at p. 960, 103 Cal.Rptr.2d 672, 16 P.3d 94.) Accordingly, the indemnity duty did not "extend to any [cleanup] expenses required by an administrative agency, like the Regional Water Boards, pursuant to an environmental statute, like the Porter-Cologne Act." (Id. at p. 974, 103 Cal.Rptr.2d 672,16 P.3d 94.)
In Powerine the court focused on the correlation between the standard policy's duty of indemnification and duty to defend suits brought against the insured. The court reasoned that since the term suits is limited to civil court actions (Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 878-888, 77 Cal. *677 Rptr.2d 107, 959 P.2d 265), and the duty to defend is broader than the duty to indemnify, the duty to indemnify cannot include sums not ordered by a court in a suit. (Powerine, supra, 24 Cal.4th at p. 961, 103 Cal.Rptr.2d 672, 16 P.3d 94.) The court explained "the provision imposing the duty to indemnify, which can arise only after damages are fixed in their amount, generally states that the insurer `will pay all sums that the insured becomes legally obligated to pay as damages' for harm proved within coverage. [¶] The provision imposing the duty to defend expressly links `damages' to a `suit,' i.e., a civil action prosecuted in a court. For it is in a `suit' that `damages' are sought in some amount through the court's order. [¶] The provision imposing the duty to indemnify impliedly links `damages' to a `suit,' i.e., a civil action prosecuted in a court. For it is in a `suit' that `damages' are fixed in their amount through the court's order." (Id. at pp. 961-962, 103 Cal.Rptr.2d 672, 16 P.3d 94.)
The County asserts Powerine is inapplicable because the nonstandard ACE policy, unlike a standard CGL policy, contains no clause requiring the insurer to defend the insured against "suits," and thus the term damages in the insuring clause here is not linked to a civil action. In Powerine, however, the court also held that under the "wider focus on the standard policy within the legal and broader culture," the term damages in the insuring clause itself shows the indemnity obligation is limited to money ordered by a court. (Powerine, supra, 24 Cal.4th at p. 962, 103 Cal.Rptr.2d 672, 16 P.3d 94.) The court explained that "`[d]amages' exist traditionally inside of court. [Citations.] [¶] ... [¶][A]s a sum that the insured becomes legally obligated to pay, `damages' presuppose an institution for their ordering, traditionally a court, albeit no longer exclusively. [Citations.] `Damages' do not constitute a redundancy to a `sum that the insured becomes legally obligated to pay,' but a limitation thereof." (Id. at pp. 962-963, 103 Cal.Rptr.2d 672, 16 P.3d 94.) Standing alone, the absence in the ACE policy of a duty of defense does not show the inapplicability of Powerine.
Alternatively, the County asserts Powerine is inapplicable because the ACE policy contains the following provision not contained in a standard CGL policy.

"LIMITS OF LIABILITY: Liability under this policy shall attach to the company only after ... the named insured [has] paid or [has] been liable to pay, the full amount of [its] respective ultimate net loss liabilities as follows:
"100,000 EACH OCCURRENCE
"250,000 ANNUAL AGGREGATE
"Personal Injury or Property Damage or Personal Injury and Property Damage combined
"and the company shall then be liable to pay only such additional amounts as will provide the insured with a total coverage under the policy ... and/or whatever portion of coverage is self-insured by the named insured, and this policy combined of:
"$1,000,000.00 each occurrence combined single limit for Personal Injury or Property Damage....
"It is hereby agreed that should the named insured utilize a self-insurance program or a self-insured retention arrangement for any part of the underlying limits of liability, then the named insured's salaried employees or their designee shall be used as adjusters on behalf of the named insured. It is further agreed that all legal matters concerning claims under this policy is excess of any self-insured portion of underlying coverage shall be coordinated *678 through a firm or person mutually agreed upon." (Italics added.)
The County also relies on the ACE policy's definition of 'ultimate net loss,' as used in the preceding provision, as "the sum or sums which the assured shall become legally obligated to pay in settlement or satisfaction of claims, suits or judgments ... includ[ing] all expenses from the investigation, negotiation and settlement of claims ... and shall include legal costs." (Italics added.)
The County asserts that because amounts it incurs in settlements of nonlitigated claims are included in its deductible, or self-insured retention, it is illogical to interpret the term damages in the insuring clause to exclude settlements of nonlitigated claims. The County argues the application of $100,000 of a settled claim toward the per occurrence deductible would serve no purpose if the amount of the settlement exceeding the deductible were not covered.
The ACE policy obviously contemplates the County's settlement of claims. However, the insuring clause, read in its full context, cannot reasonably be interpreted to include environmental cleanup costs and other settlements of nonlitigated claims that ACE did not approve. The ACE policy includes as a condition of coverage that the County "shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence." The policy also contains a so-called no action clause, which precludes a suit against ACE "until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."
Conditions such as these are typically found in liability policies that, unlike the ACE policy, include the insurer's duty of defense. They are intended to invest the insurer with the right to control the defense of actions against the insured, and to preclude collusion between the insured and the third party claimant.: (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶ 7:439.6, p. 7116; Safeco Ins. Co. v. Superior Court (1999) 71 Cal.App.4th 782, 787, 84 Cal. Rptr.2d 43; Jamestown Builders, Inc. v. General Star Indemnity Co. (1999) 77 Cal. App.4th 341, 346, 91 Cal.Rptr.2d 514; Clark v. Bellefonte Ins. Co. (1980) 113 Cal. App.3d 326, 335,169 Cal.Rptr. 832.)
The County contends these conditions are inapplicable because ACE "surrendered any right to consent to the claims at issue herein by ignoring the County's repeated entreaties for coverage ..., forcing the County to fend for itself." However, the County relies on cases concerning the insurer's breach of the duty to defend. For instance, in Pruyn v. Agricultural Ins. Co. (1995) 36 Cal.App.4th 500, 515, 42 Cal.Rptr.2d 295, the court noted that when an insurer abandons an insured by refusing to defend, the insured "is free to make the best settlement possible with the third party claimant, including a stipulated judgment." (See also Safeco Ins. Co. v. Superior Court, supra, 71 Cal.App.4th at p. 787, 84 Cal.Rptr.2d 43 ["`no action'" clause is inapplicable when insurer breaches duty to defend; insurer forfeits right to control defense and is bound by stipulated judgment]; Sanchez v. Truck Ins. Exchange (1994) 21 Cal.App.4th 1778, 1786-1787, 26 Cal.Rptr.2d 812 [same]; Diamond Heights Homeowners Assn. v. National American Ins. Co. (1991) 227 Cal.App.3d 563, 581, 277 Cal.Rptr. 906 [same]; Lamb v. Belt Casualty Co. (1935) 3 Cal.App.2d 624, 630-631, 40 P.2d 311 ["denial of liability ... and ... refusal to defend the suits constituted *679 such a breach of the contract that the insured was released from his obligation to leave the management thereof to it, and was justified in proceeding to defend on his own account."].)
Liability insurance ordinarily imposes two separate obligations on the insurer, the duty of indemnification and the duty to defend the insured against third party claims that are potentially covered by the policy. (Croskey et al, Cal. Practice Guide: Insurance Litigation, supra, ¶ 7:500, p. 7B-1.) The duty to defend arises when a covered claim is tendered to the insurer, and "[a]s long as the insurer is providing a defense, it has the right to decide whether or not to settle." (Id. at ¶ 7.502.5, p. 7B-2.) In contrast, an insurer's duty to indemnify does not arise until "damages are fixed in amount (e.g., by a settlement or judgment)." (Id. at ¶¶ 7:501.1, p. 7-B1, 17:502.5, p. 7B-2.)
In Powerine, the standard CGL policy contained a "no-action provision, which, in typical language, generally states that `no action' by a third party `shall lie' against the insurer unless the insured's `obligation to pay shall have finally been determined' either by a `judgment' against the insured `obtained after an actual trial' or by a `settlement' reduced to contract to which the insurer `agrees.'" (Powerine, supra, 24 Cal.4th at p. 962, fn. 4, 103 Cal.Rptr.2d 672, 16 P.3d 94.) The court found this provision supported its conclusion "the standard policy itself reveals that the duty to indemnify is limited to money ordered by a court." (Ibid.) The court explained: "This provision implies that the insurer may owe a duty to fund such a settlement [one agreed to by the insurer]. It also implies that the insurer may owe a duty to indemnify. In so doing, referring as it does to a `judgment,' it implies as well that that duty is limited to money ordered by a court." (Ibid.)
The policy allows ACE to approve a settlement of a nonlitigated claim, but it does not require ACE to do so. As the court inferred in Powerine, supra, 24 Cal.4th at p. 971, 103 Cal.Rptr.2d 672, 16 P.3d 94, to limit their exposure insurers voluntarily settle third party claims against their insureds "in a `large percentage' of ... disputes" and "litigation is regularly avoided."
We conclude the definition of damages in Powerine controls here.[3] The interpretation of the policy the County urgesthat ACE is bound by settlements of nonlitigated claims it did not approve would render the no voluntary payment and no action provisions meaningless. We interpret insurance policies "as a whole, with each clause lending meaning to the others. [Citation.] Importantly, we should interpret contractual language in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory." (Titan Corp. v. Aetna Casualty & Surety Co. (1994) 22 Cal.App.4th 457, 473-474, 27 Cal.Rptr.2d 476.)
The County relies on AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (AIU), in which the court held the plain meaning of the term damages in standard CGL policies includes "the costs of reimbursing government agencies and complying with injunctions ordering cleanup under [Comprehensive Environmental Response, Compensation, *680 and Liability Act] and similar statutes." (Id. at p. 814, 274 Cal.Rptr. 820, 799 P.2d 1253.) In AIU, however, the United States and local administrative agencies had sued the insured for reimbursement of cleanup costs, and the insured brought a declaratory relief action against the insurers to establish the policies covered any costs that may be ordered in the underlying actions.
In Powerine, supra, 24 Cal.4th at p. 966, 103 Cal.Rptr.2d 672, 16 P.3d 94, the court explained that in AIU "we held to the effect that the duty to indemnify may embrace all money ordered by a court, including `money that the insured must give under law as compensation to third parties' and also `money that the insured must itself expend in equity in order to provide relief of the same sort.' [Citation.] We did not hold that the duty extends to any money in addition to that ordered by a courtincluding any expenses required by an administrative agency pursuant to an environmental statute."
The County's reliance on Vandenberg v. Superior Court (1999) 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229 (Vandenberg), is also misplaced. In Powerine, the court explained: "[In Vandenberg] we held to the effect that the duty to indemnify may embrace all money ordered by a court, including money ordered by a court under the law of torts and, in some cases, money ordered by a court under the law of contracts. [Citation.] Again, we did not hold that the duty extends to any money in addition to that ordered by a court including any expenses required by an administrative agency pursuant to an environmental statute. Indeed, we implied the opposite, albeit only in dictum, stating to the effect that the duty depends on a legal obligation to pay a sum as damages, which depends in turn on `liability imposed in a definite sum by a final judgment....'" (Powerine, supra, 24 Cal.4th at p. 966, 103 Cal.Rptr.2d 672,16 P.3d 94, citing Vandenberg, supra, 21 Cal.4th at p. 839, 88 Cal. Rptr.2d 366, 982 P.2d 229.)
The Board's environmental claim and the Sossaman and Atkinson claims were neither litigated nor approved by ACE. Accordingly, the trial court properly granted ACE's motions for summary adjudication of its duty to indemnify the County for costs of complying with CAO 97-17 and summary judgment of its duty to indemnify the County for the Sossaman and Atkinson settlements.

B
The County contends it reasonably expected the ACE policy to cover nonlitigated settlements and environmental cleanup costs not ordered by a court. The insured's objectively reasonable expectations are germane in determining "`whether the disputed policy language, in context, is free from ambiguity and has a plain and clear meaning to a layperson.'" (Croskey et al., Cal. Practice Guide: Insurance Litigation, supra, ¶ 4:41, p. 4-14.) Given the unambiguous no voluntary payment and no action conditions of the ACE policy, an insured would not reasonably expect coverage for nonlitigated settlements not approved by ACE. The fact that ACE apparently paid the County approximately $14,000 in 1978 for the settlement of unspecified claims exceeding the deductible, or self-insured retention, does not persuade us otherwise.
We are also unpersuaded by the County's assertion the ACE policy covers cleanup costs and other nonlitigated settlements because such coverage is not specifically excluded. "Insurance policies are written in two parts: an insuring agreement which defines the type of risks being covered, and exclusions, which remove coverage for certain risks which are initially *681 within the insuring clause.... [¶] ... [W]hen an occurrence is clearly not within the coverage clause, it does not also have to be specifically excluded." (Rosen v. Nations Title Ins. Co. (1997) 56 Cal.App.4th 1489,1497, 66 Cal.Rptr.2d 714.)
Also lacking merit is the County's assertion there is coverage under the ACE policy because the environmental cleanup costs and Sossaman and Atkinson settlements were liabilities assumed under a contract. Again, the insuring clause requires ACE to indemnify the County for "all sums which [it] is obligated to pay by reason of liability imposed by law or assumed under contract or agreement," for damages attributable to injury to person or property. However, "the insured must assume the other contracting party's tort liability to third parties in order for insured contract coverage to attach." (Richmond & Black, Expanding Liability Coverage: Insured Contracts and Additional Insureds (1996) 44 Drake L.Rev. 781, 784; Bernstein v. Consolidated American Ins. Co. (1995) 37 Cal.App.4th 763, 771, 43 Cal. Rptr.2d 817, disapproved on another ground in Vandenberg, supra, 21 Cal.4th at p. 841, fn. 13, 88 Cal.Rptr.2d 366, 982 P.2d 229; Croskey et al, Cal. Practice Guide: Insurance Litigation, supra, ¶ 7:149.6, p. 7A-48.) Here, the County did not assume the toil liability of another.

DISPOSITION
The judgment is affirmed. ACE is awarded its costs on appeal.
WE CONCUR: McDONALD, Acting P.J., and O'ROURKE, J.
NOTES
[1] Pacific obtained summary judgment in its favor and is not involved in this appeal.
[2] At the trial court, the County did not argue that for purposes of determining coverage under the ACE policy there is any distinction between the Sossaman and Atkinson settlements and expenses incurred in complying with CAO 97-17. On appeal, the County also makes no such distinction.
[3] We accepted the amicus curiae brief of United Policyholders, "a not-for-profit educational organization ... dedicated to educating policyholders about their rights and duties under their insurance policies." The principal complaint of United Policyholders is that Powerine, supra, 24 Cal.4th 945, 103 Cal. Rptr.2d 672, 16 P.3d 94, was wrongly decided. This court, of course, is bound by the decisions of our Supreme Court.